UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,
                                        Plaintiff,

                                                                       Case #15-CR-6082-FPG

v.

                                                                       DECISION AND ORDER


RICARDO BAILEY,
                                        Defendant.
_____


## INTRODUCTION

The four count Indictment in this case alleges that Defendant Ricardo Bailey: (1) conspired to possess with intent to distribute 500 grams or more of cocaine; (2) used and maintained the premises at 54 Strong Street, Rochester, New York to manufacture and distribute cocaine; (3) possessed a .40 caliber glock pistol in furtherance of drug trafficking crimes; and (4) possessed with intent to distribute 500 grams or more of cocaine. *See* ECF No. 97. By Text Order dated June 5, 2015, this matter was referred to United States Magistrate Judge Marian W. Payson, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). ECF No. 98.

Presently before the Court are three separate Report and Recommendations from Judge Payson. The first Report and Recommendation (ECF No. 164) recommends the denial of Defendant's Motion to Suppress certain wiretap evidence (ECF Nos. 111, 119); the second Report and Recommendation (ECF No. 168) recommends the denial of Defendant's Motion to Dismiss based upon speedy trial grounds (ECF NO. 151); and the third Report and Recommendation (ECF No. 173) recommends the denial of Defendant's remaining motions (ECF Nos. 111, 112, 119, 127, 128, 140, 145, 156).

Defendant has timely objected (ECF Nos. 166, 171, 176) to each of Judge Payson's Report and Recommendations, and the government filed a response to Defendant's objections to the first Report and Recommendation. ECF No. 174. The government did not file any response to Defendant's objections to the second or third Report and Recommendations.

Since Defendant has filed objections, this Court must conduct a *de novo* review as to those portions of the Report and Recommendations to which objections have been made. *See* 28 U.S.C. § 636(b)(1)(C). In doing so, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* As part of this review, the Court has considered all of the parties' submissions to date, and based upon that *de novo* review, I find no basis to alter, modify or reject Judge Payson's first or second Report and Recommendations, and will defer consideration of Judge Payson's third Report and Recommendation for the reasons discussed below.

DISCUSSION

I.    The First Report and Recommendation

Judge Payson's first Report and Recommendation (ECF No. 164) addresses and rejects Defendant's motions to suppress evidence that was obtained through the use of eavesdropping warrants issued by Monroe County Court Judge Vincent DiNolfo. ECF Nos. 111, 119. Specifically, Defendant challenges three specific eavesdropping warrants issued by Judge DiNolfo. He challenges a warrant issued on January 5, 2015 for phone number 646-842-5157; he challenges a warrant issued on January 14, 2015 for phone number 585-615-9785; and he challenges a warrant issued on January 26, 2016 for phone number 347-968-3130.

At the outset, neither Judge Payson nor this Court reviews Judge DiNolfo's decision to issue the requested warrants *de novo*. As a reviewing court, both Judge Payson and this Court

must only look to see if "the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009). Further, it is well settled that the government need not "exhaust all conceivable investigative techniques before resorting to electronic surveillance." *Id.* Rather, a law enforcement officer who applies for an eavesdropping warrant is only required to inform the issuing judge "of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *Id.*

In reviewing a probable cause determination, the Court gives "due weight to inferences drawn from those facts by resident judges and law enforcement officers," *United States v. Wilson*, 699 F.3d 235, 242 (2d Cir. 2012) (internal quotation marks and alterations omitted), as "courts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004). Reviewing courts "must accord considerable deference to the probable cause determination of the issuing magistrate." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)).

A. Normal Investigative Techniques

The main thrust of Defendant's argument is that the officers who applied for and executed these eavesdropping warrants did not sufficiently demonstrate that normal investigative procedures had been attempted or would be unsuccessful before they resorted to the use of wiretaps. Applying the standards recited above, this Court disagrees.

As Judge Payson recounted, the officers who applied for these warrants indeed utilized traditional investigative techniques, such as surveillance and interviews with a confidential informant. However, they also informed Judge DiNolfo, as the issuing judge, that while these

3

techniques provided valuable information, they also had certain limitations as it related to their investigation. As two examples, the officers recounted that while surveilling one vehicle, the driver utilized driving tactics which are ordinarily designed to avoid or detect surveillance, and those tactics made physical surveillance difficult to use. Further, while the officers used a confidential informant to gather information about the drug distribution activities they were investigating, the officers also informed Judge DiNolfo that the informant could not introduce an undercover officer to those higher up in the drug distribution organization, which limited their ability to further investigate all aspects of their investigation.

Despite Defendant's protestations to the contrary, this Court concludes, as did Judge Payson, that the officers provided at least the required "minimally adequate" facts to allow Judge DiNolfo to conclude that the issuance of the requested warrants was appropriate. As a result, Defendant's challenge to the warrants based on the alleged failure of the officers to exhaust other traditional investigative techniques is without merit.

B. Probable Cause and *Franks*

Defendant also argues that probable cause did not exist for Judge DiNolfo to issue the requested warrants, and he focuses on his belief that the officers mis-interpreted certain portions of previously intercepted communications. As Judge Payson pointed out, the Second Circuit has held that "drug dealers rarely speak openly about their trade," and the use of "narcotics code" may support a probable cause finding. *United States v. Cancelmo*, 64 F.3d 804, 808 (2d Cir. 1995); *see also United States v. Velasquez*, 271 F.3d 364, 372 (2d Cir. 2001) ("we have observed that individuals dealing in cocaine utilize a variety of terms to refer to the illegal substance.").

The challenged warrant applications all relied upon and incorporated approximately twenty prior wiretap applications, which provided excerpts of conversations that discussed

4

cocaine trafficking. In making these applications, the officers asserted that based upon their training and experience, the coded language used on these calls referred to narcotics, and Judge Payson cited a series of cases in her Report and Recommendation that demonstrate both that such a statement to the issuing judge by the requesting officers is permissible, and that an issuing judge may rely on such statements if they choose to do so. *See* ECF No. 164, at 27-28.

Defendant furthers his argument that the warrant is invalid by seeking a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), because one of the officers' interpretations of Defendant's January 22, 2015 conversation with Edward Mighty turned out to be incorrect. In short, the officer interpreted a specific call to mean that an individual named "Chin" (and who was believed to be Garfield Bourne) was a supplier of cocaine. However, the supplier actually turned out to be Winifredo Gonzalez, a Brooklyn resident who also goes by the name "Chin." While it is now uncontested that the officer mistakenly identified Bourne as the cocaine supplier, it does not require a *Franks* hearing.

The standard to obtain a *Franks* hearing is well settled, and a defendant is entitled to such a hearing where he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. "The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (quotation marks omitted).

Here, Defendant has made no showing that the officer's identification was anything but a mistake. He has offered no evidence to suggest that the officer was aware that "Chin" was Gonzalez and not Bourne, and Defendant has provided no basis to demonstrate that the officer

should have known that his belief was incorrect. As such, Defendant is not entitled to a *Franks* hearing. *See, e.g., United States v. Swartz*, No. 07-CR-6028L, 2008 WL 2357408, *7-8 (W.D.N.Y. June 4, 2008) (denying *Franks* hearing despite misstatement in affidavit where court concluded that the officer's affidavit "was not knowingly misleading"). But even if Defendant could make this showing, his challenge still fails because Defendant cannot show that the mistaken information was material to Judge DiNolfo's determination of probable cause. As Judge Payson detailed in her Report and Recommendation, even if this conversation were removed from the wiretap affidavit, the remaining allegations in the affidavits, which include coded references to money, the quality and quantity of narcotics, and the prices of narcotics, were sufficient to establish probable cause. *See* ECF No. 164, at 34-37.

C. <u>Good Faith</u>

In addition, even if the challenged warrants were somehow deficient, the officers here relied on those warrants in good faith, and therefore the exclusionary rule would be inapplicable pursuant to *United States v. Leon*, 468 U.S. 897 (1984). There is simply no evidence in the record to support a finding that the executing officers did not rely on the issued warrants in good faith, nor is there any evidence at all to suggest that Judge DiNolfo was misled or that he wholly abandoned his judicial role, or that the warrants are so lacking in probable cause or facially deficient to render the officers' reliance on the warrants unreasonable. *Leon*, 468 U.S. at 923. As a result, even if the warrants were somehow deficient, suppression would still not be an appropriate or available remedy.

For all of these reasons, Defendant's objections (ECF No. 166) to Judge Payson's first Report and Recommendation are OVERRULED, the Report and Recommendation (ECF No.

164) is ADOPTED IN ITS ENTIRETY, and Defendant's motions to suppress wiretap evidence (ECF Nos. 111, 119) are DENIED.

### II. The Second Report and Recommendation

Judge Payson's second Report and Recommendation (ECF No. 168) addresses and rejects Defendant's claim that his rights under the Speedy Trial Act, 18 U.S.C. § 3161, have been violated. Defendant has objected to three specific periods of time that Judge Payson determined were excludable, which this Court will address in turn.

#### A. November 6, 2015 to December 16, 2015

On October 23, 2015, Judge Payson set certain scheduling deadlines in open court. *See* ECF No. 107. She ordered Defendant to file his motions by November 6, 2015, the government to respond by November 20, 2015, and set oral argument for November 24, 2015. *Id.* As directed, Defendant filed his pretrial motions on November 6, 2015. ECF No. 111. He also filed a supplemental suppression motion on November 10, 2015. ECF No. 112. By letter dated November 19, 2015, the government requested an extension of time until December 11, 2015 to respond to Defendant's motions. ECF No. 113. In making that request, the government noted that the pending motions were 140 pages long, and also noted a brief holiday vacation, and other pending case responsibilities. *Id.* Judge Payson granted the government's request, and directed their response to be filed by December 11, 2015, with oral argument to be held on December 16, 2015. *Id.*

Defendant argues that the 26 day time period between the government's original response date, November 20, 2015 and the continued date, which Defendant claims is December 16, 2015, is not excludable because when Judge Payson granted the government's request, she did not

7

make an on the record finding that continuance served the ends of justice.  Defendant argues that such an on the record finding is required by 18 U.S.C. §§ 3161(h)(7)(A), and the Supreme Court's decision in *Bloate v. United States*, 559 U.S. 196 (2010).  The Defendant is incorrect.

The relevant exclusion under the Speedy Trial Act mandates that "any period of delay resulting from other proceedings concerning the defendant, including but not limited to… delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" shall be excluded when computing the time within which trial must commence.  18 U.S.C. §§ 3161(h)(1)(D).  Because Defendant's Motion remained pending during the period he complains of – November 20, 2015 to December 16, 2015 – that time period is automatically excluded under the Speedy Trial Act without the need for an "ends of justice" finding under a separate section of the Speedy Trial Act.

The Supreme Court's holding in *Bloate* does not state otherwise.  There, the Supreme Court held that:

> Section 3161(h) specifies the types of delays that are excludable from the calculation. Some of these delays are excludable only if the district court makes certain findings enumerated in the statute. *See* § 3161(h)(7). Other delays are automatically excludable, *i.e.,* they may be excluded without district court findings. As relevant here, subsection (h)(1) requires the automatic exclusion of "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to" periods of delay resulting from eight enumerated subcategories of proceedings.

*Bloate*, 559 U.S. at 203.

Indeed, the Supreme Court specifically observed that section § 3161(h)(1)(D), one of the referenced eight enumerated subcategories, "communicates Congress' judgment that delay resulting from pretrial motions is automatically excludable, *i.e.*, excludable without district court findings, *only* from the time a motion is filed through the hearing or disposition point." *Id.*, at 206. (emphasis in original).

8

*Bloate* specifically dealt with the question of whether the time period *prior* to the filing of motions could be excluded under the Speedy Trial Act. Since an automatic exclusion for motion preparation is not enumerated in § 3161(h)(1)(D), the Supreme Court held that such a time period could only be excluded under the "ends of justice" provision, § 3161(h)(7).

Here, there is no need to resort to the "ends of justice" provision, since § 3161(h)(1)(D) "automatically exclude[s]" the period of time at issue "without district court findings." As a result, Defendant's reliance on *Bloate* is misplaced, and the time period between November 20, 2015 and December 16, 2015 is automatically excluded under § 3161(h)(1)(D).

### B. February 1, 2016 to March 23, 2016

Defendant similarly argues that the time period of February 1, 2016 to March 23, 2016 is not excludable because Judge Payson granted extensions without making an "ends of justice" finding on the record. Specifically, he argues that he filed his motion on February 1, 2016, and the government was scheduled to respond by February 16, 2016. See ECF Nos. 119, 120. By letter dated February 16, 2016, the government requested an extension until March 8, 2016 to respond to Defendant's 66 page, single spaced, supplemental motion. ECF No. 122. Judge Payson granted the requested extension. *Id*. Similarly, by letter dated March 8, 2016, the government requested a further extension until March 23, 2016, which Judge Payson also granted. ECF No. 124. The government subsequently filed its response on March 23, 2016, ECF No. 126, and Judge Payson heard oral argument from the parties on April 7, 2016. ECF No. 130.

For the reasons previously stated, Defendant's reliance on *Bloate* is similarly misplaced, and the time period between February 1, 2016 and March 23, 2016 is automatically excluded under § 3161(h)(1)(D).

9

## C. July 28, 2016 to August 8, 2016

Regarding a separate pretrial motion that Defendant filed on June 1, 2016 (ECF No. 140), he argues that "on June 28, 2016 defendant's motion was technically fully filed; the government had respond (*sic*) and the court was expected to make a disposition…" ECF No. 171, at 20. Defendant argues that the 30-day advisement period (*see* 18 U.S.C. § 3161(h)(1)(H)), ran from June 28, 2016 to July 27, 2016 and was automatically excluded. Thus, he argues that the 11 days from July 28, 2016 to August 8, 2016 are non-excludable. This Court disagrees.

There is no basis in the record to find that Defendant's June 1, 2016 motion was ready for disposition on June 28, 2016. Rather, the record reveals that on June 28, 2016, Judge Payson scheduled a hearing on Defendant's June 1, 2016 motion, and that hearing was set for August 8, 2016. ECF No. 146. On July 26, 2016, based upon information received from the parties, Judge Payson adjourned the hearing without date, and converted the August 8, 2016 hearing date into a status conference. ECF No. 150. Based on this timeline, Defendant's June 1, 2016 motion was taken under advisement, at the earliest, on July 26, 2016. A motion is taken under advisement "once the court has everything it expects from the parties prior to making its decision." *United States v. Piteo*, 726 F.2d 50, 52 (2d Cir. 1984). Until July 26, 2016, Judge Payson was expecting to hold oral argument regarding Defendant's June 1, 2016 motion on August 8, 2016, after which the motion would presumably have been taken under advisement. Even assuming *arguendo* that on July 26, 2016, when Judge Payson adjourned the oral argument, she had everything she expected to make a decision on the motion, and that therefore triggered her 30 day advisement period, the period of excludable time would then run from July 26, 2016 to August 25, 2016. In other words, the period of July 28, 2016 to August 8, 2016 would be automatically excluded. As such, no time elapsed from the speedy trial clock between July 28, 2016 and August 8, 2016.

For all of these reasons, Defendant's objections (ECF No. 171) to Judge Payson's second Report and Recommendation are OVERRULED, the Report and Recommendation (ECF No. 168) is ADOPTED IN ITS ENTIRETY, and Defendant's motion to dismiss on speedy trial grounds (ECF No. 151) is DENIED.

### III. The Third Report and Recommendation

Judge Payson's Third Report and Recommendation (ECF No. 173) addresses the remaining dispositive motions, and recommends their denial. Defendant filed objections consisting of 176 pages (ECF No. 175), which were signed by Defendant on December 9, 2016, postmarked on December 12, 2016, and received by the Court on December 13, 2016. *Id.*, at 175-177.

Subsequently, the Court received a letter from Defendant which reads as follows:

On December 9, 2016, I mailed out my 3rd/final response to the honorable Judge Payson's 3rd Report and Recommendation which I had received on December 1, 2016. However, to date, I have not received a notification from the court that my motion papers had been received, nor of the deadline the government had been given to respond. I have attached my mail log for the last 3 weeks as proof that these mails were sent out in the sole care of the United States Postal Service. Any assistance rendered in addressing these concerns would be greatly appreciated. Thank you in advance for your kind consideration.

One fair reading of this letter is that Defendant is telling the Court that he has sent three separate responses (which I interpret to mean "objections") regarding the third Report and Recommendation. Indeed, this reading would seem to be consistent with Defendant's statement that "these mails" (as opposed to a single mailing) were sent to the Court. On the other hand, Defendant may be saying that he mailed a single response that was regarding the third Report and Recommendation, and that response was similar in nature to his two prior responses to the first and second Report and Recommendations.

11

Defendant's letter also referenced an attached mail log, but the only document attached to his letter was something different. Instead, attached was a separate letter to Assistant United States Attorney Grace Carducci, which was copied to the Court, and regards a separate civil case pending before this Court.

Based upon Defendant's letter to this Court, in an abundance of caution and in light of Defendant's *pro se* status, the Court will defer consideration of Judge Payson's third Report and Recommendation (ECF No. 173), to clarify with Defendant that this Court has received all of his submissions regarding Judge Payson's third Report and Recommendation.

Defendant shall inform this Court, in writing, by Friday, March 3, 2017, whether or not he believes that the Court is missing one of his submissions regarding Judge Payson's third Report and Recommendation. At present, the Court has one submission from him regarding the third Report and Recommendation, which is his 176 page set of objections, dated December 9, 2016. If Defendant believes another submission is missing, he shall provide a copy of that submission with his letter to the Court. On the other hand, if his 176 page set of objections is all the Court was supposed to receive, he shall state that in his writing to the Court, and the Court will then issue its decision on the third Report and Recommendation in short order.

In order to ensure that the Court has all of the Defendant's submissions regarding the third Report and Recommendation, the Court additionally finds that the time period between February 18, 2017 and March 17, 2017 shall be excluded under § 3161(h)(7)(A) of the Speedy Trial Act. Specifically, the Court finds that granting this continuance to ensure, in light of the Defendant's letter, that the Court has all of the Defendant's filings prior to rendering a decision outweighs the Defendant's and the public's interest in a more speedy trial.

CONCLUSION

Based on all of the foregoing, the Court ACCEPTS AND ADOPTS the first and second Report and Recommendations filed by United States Magistrate Judge Marian W. Payson (ECF Nos. 164, 168) in their entirety, and Defendant's motions to suppress wiretap evidence and to dismiss the Indictment for a violation of the Speedy Trial Act (ECF Nos. 111, 119, 151) are DENIED in all respects.

Further, Defendant shall inform the Court, in writing and by March 3, 2017, whether he provided to the Court submissions regarding the third Report and Recommendation other than his 176 page set of objections, dated December 9, 2016, which has been filed with the Court.

For the reasons stated above, the time period between February 18, 2017 and March 17, 2017 shall be excluded under § 3161(h)(7)(A) of the Speedy Trial Act.

IT IS SO ORDERED.

Dated: February 18, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court